281 P.2d 665

In re CENTRAL EUREKA CORPORATION, For the Payment of Contributions under the Employment Security Law.

**EMPLOYMENT SECURITY AGENCY,** State of Idaho, Appellant,

v.

**CENTRAL EUREKA CORPORATION,** Respondent.

No. 8192.

Supreme Court of Idaho.

March 23, 1955.

Robert E. Smylie, Atty. Gen., John W. Gunn, Asst. Atty. Gen., for appellant.

288

Van de Steeg & Schiller, Nampa, for respondent.

KEETON, Justice.

This proceeding presents for determination a controversy between the Employment Security Agency, hereinafter referred to as the Agency, and Central Eureka Corporation, hereinafter referred to as the Company, to determine the amount of employment taxes the Company should be required to pay the Agency. The pertinent facts giving rise to the controversy were stipulated.

Subsequent to November 10, 1951, and prior to July 1, 1953, a partnership consisting of A. D. Anderson and John Van Paepeghem, hereinafter referred to as the Partnership, operated a business in Ada County, known as the Gem State Meat Packing Company. Effective July 1, 1953, the Company acquired by purchase all of the employing enterprises of the Partnership, and became its successor.

The Company continued uninterruptedly in the same business at the same place, and generally speaking, the employees were the same.

The Company filed its reports of wages paid for the third and fourth quarters of 1953 with the Agency and paid the amount computed by it to be due as contributions under the Employment Security Law. The Agency disagreed with the computation as to the amount due and made a deficiency

assessment for which respondent was billed. J. E. Smith, chief of contributions of the Agency, sustained the deficiency assessment. On appeal to the Industrial Accident Board, the Board reversed the order and held the deficiency assessment to be void. From such order the Agency appealed.

The dispute as to the employment tax to be paid by the Company arises over an interpretation of the exemption from taxation on wages in excess of $3000 paid any employee by an employer in any calendar year.

It is the contention of the Company that in determining the exemption it should be allowed to compute all wages paid to any retained employee during the calendar year of 1953, whether paid by the predecessor Partnership or the successor Company, and where the total wages paid such employee either by the Partnership or the Company, or by both combined, exceed $3000 the excess is exempt from taxation.

The Agency contends that in computing the exemptions on wages paid retained employees, the Company cannot include in the total wages paid, the amount paid by the predecessor Partnership during the first and second quarters of the calendar year of 1953; the position of the Agency is that the Partnership and the Company are separate employers and that the statute hereinafter quoted confers no rights on the Company as a successor in the matter before us.

Section 72–1328 I.C. provides in substance that the term "wages" as used in the Act covers only the first $3000 paid to an individual in covered employment by a covered employer during the calendar year. Wages in excess of the $3000 paid one individual by a covered employer during the calendar year are exempt.

Section 72–1351, subd.(d) I.C., Pocket Supplement, prescribing the rights of a successor in interest of a previous employing entity or business is as follows:

"Experience rating.—(a) Subject to the other provisions of this act, each eligible employer's contribution *rate* shall be determined in the manner set forth below for the calendar year 1952 and for each calendar year thereafter: * * *

"(d) * * * If on or after March 31, 1953, the organization, trade or business, including the entire employing enterprise and all its incidents *for all purposes of the Unemployment Compensation Law,* of any covered employer is by purchase or otherwise transferred to an employer, whether or not such acquiring employer was an employer within the meaning of section 72–1320, prior to such acquisition the employer to which the transfer is made may assume the position of such employer with respect to such employer's *experience, payrolls and otherwise* the same as if there had been no

change in ownership and shall be required to assume and continue the experience of such employer pursuant to the provisions of this section, provided, however, no employer to which the organization trade or business of an employer has been transferred shall be entitled to a rate of contributions of less than two and seven tenths per cent until such employer based upon its experience and the experience of the organization, trade or business transferred would be entitled under the provisions of the Federal Unemployment Tax Act to additional tax credit offset for good experience under this act." (Emphasis supplied.)

In computing the tax due from the Company, it contends that by the provisions of the Act above quoted, it is a successor in interest of the Partnership for all purposes under the Employment Security Law, including the benefit which would arise in determining the exemption.

It is the contention of the Agency that the rights of the Company as a successor are limited to the experience rating acquired by the predecessor Partnership.

The title to Ch. 180, 1953 S.L. reads as follows:

"Relating to Experience Rating Under an Employment Security Law; Amending Section 72–1351, Idaho Code, as Amended by Section 6, Chapter 236, Session Laws of 1951, Regular Session, to Provide That an Employee Unit Purchasing a Business after March 31, 1953, may Assume the Position of the Seller with Respect to

Experience, Payrolls, etc., with Certain Limitations, and Declaring an Emergency."

The question is, should subd.(d) of the Act above-quoted be construed as limiting a successor's rights to experience rating only, or should it be construed to include the rights here sought by the Company?

The amendment above-quoted by its terms provides that an employer unit purchasing a business after March 31, 1953, may assume the position of a seller with respect to experience, payrolls, and otherwise.

The term "payrolls" encompasses, for exemption computation, the payrolls of the predecessor, transferors and transferees totaling the amounts in excess of $3000 paid each retained employee for the calendar year of 1953.

It appears to us that the new employer, the Company, should, in the matter before us, be considered a continuance of the Partnership for tax purposes under the Act, and in determining the amount of wages paid any retained employee in computing the exemption, the amount paid such employee by the Partnership during the calendar year should be included. Hence the successor Company, in the matter before us, succeeds to the rights of the Partnership.

We therefore hold that the employing unit to whom the entire business is transferred during a taxable year, in computing the amount of tax which the Company should pay, may add the wages paid the retained employees by the predecessor Partnership during the year 1953 to those paid by the successor Company to determine the exemption. The order of the Industrial Accident Board is affirmed. Costs to respondent.

TAYLOR, C. J., and ANDERSON and SMITH, JJ., concur.

PORTER, Justice (dissenting).

The Employment Security Act created the Employment Security Administration Fund to foster employment security. The affirmance of the order of the Industrial Accident Board will result in depriving such fund of substantial payments which it has heretofore received. It will lessen the contributions of certain employers to the fund set up for the benefit of employees. It will tend to deplete such fund and, to some extent, affect economic security. For these reasons I am moved to set forth in this dissent my views on this case in some detail.

The Employment Security Law was amended by Chapter 180, Session Laws of 1953, which amendment is codified as Section 72–1351(d), I.C. It is the contention of the Central Eureka Corporation that under this amendment it is the successor in interest to the copartnership for all purposes under the Employment Security Law including the benefit of wages paid by its predecessor. It is the contention of appellant that the corporation is to be deemed the successor in interest of the copartnership only for the purpose of determining its experience rating.

The contributions required under the Employment Security Law are determined by multiplication of a base by a rate. The base is the amount of wages paid by the covered employer not exceeding $3,000 to any individual employee during the calendar year. Section 72–1328, I.C. The standard rate is 2.7 per centum. Section 72–1350, I.C. The rate may be reduced by the experience rating of the employer, Section 72–1322, I.C., determined by the methods set out in the statute. Section 72–1351, I.C.

It must be borne in mind that the contributions are an assessment against the employer based upon the wages paid by him and not an assessment against the employee based upon the wages earned by the employee. Section 72–1349, I.C. An employer is not concerned with the amount of wages earned by one of his employees while in the employ of some other employer. He only pays contributions based on the amount of wages paid by him. A new concern must pay tax on all wages paid by it to its employees regardless of wages earned by its employees upon which some other concern has paid the taxes.

Since the inception of the Unemployment Compensation Law in 1936 until the present, all employers, successors or otherwise, have had the same wage base. The affirmance of the order of the Industrial Accident Board will result in a preferential exemption on the wage base to so-called successor employers. In order to justify this change of policy and the granting to a successor employer of an advantage over other employers in the determination of the wage base upon which contributions are to be computed, it should clearly appear from the 1953 Amendment that such was the legislative intent. This change of policy should not be predicated upon a strained judicial construction of such amendment.

The title of Chapter 180, 1953 Session Laws, whereby the amendment in question was made, reads as follows:

"*Relating to Experience Rating Under an Employment Security Law;* Amending Section 72–1351, Idaho Code, as Amended by Section 6, Chapter 236, Session Laws of 1951, Regular Session, to Provide That an Employee Unit Purchasing a Business after March 31, 1953, may Assume the Position of the Seller with Respect to Experience, Payrolls, etc., with Certain Limitations, and Declaring an Emergency." (Emphasis supplied.)

It thus appears that the legislature was dealing with the method of determining the experience rating of an employer by reason of which experience rating the employer's rate of contribution might be lowered from the standard rate prescribed by statute. The amendment was not dealing in any way and did not refer to the base upon which contributions are computed, that is, the amount of wages upon which the employer must pay taxes. If the legislature intended to change the base wages upon which taxes must be paid as well as the method of determining experience rating of a successor employer, it should have been so set out in the title of the act.

There is no mention in the title of the act of Section 72–1328, I.C., defining wages. The majority opinion holding that such section is amended or modified by the act in question in my judgment casts doubt upon the constitutionality of the act by reason of a resulting defective title.

The decision of the majority in this cause appears to be based upon the words in the amended statute emphasized in the majority opinion. I do not consider that such words justify the conclusion reached.

The word "*rate*" means the percentage to be applied to the wage base to determine the amount of the contribution.

The phrase "*for all purposes of the Unemployment Compensation Law,*" as used in the 1953 Amendment, relates to, describes and modifies *the extent of the transfer of the business* of the old employer which must be made in order to entitle the new employer to the benefits of the amendment. It does not mean, as contended by respondent, that the purchaser steps into the shoes of

the seller for all purposes of the Employment Security Law. In my judgment the meaning contended for by respondent is neither supported by the punctuation of the sentence in which the phrase occurs nor grounded in grammar.

The words, *"experience, payrolls and otherwise"*, mean that the data from such records of the predecessor may be used in the determination of the successor's experience rating. See Section 72-1351(d), I.C., as it appeared in Section 51 of Chapter 269 of the 1947 Session Laws, where it was provided that the "payroll and experience rating records of the predecessor" may be used by the successor in the determination of his experience rating.

The determination of the *experience rating* under the statute of an employer is an involved process. Section 72-1351, I.C. It requires the consideration of many factors, including the data appearing on the payrolls, the amount of contributions paid and the amount of deductions charged against the record of the employer, length of time of experience, the amount of contributions made and the amount of credits and deductions under the various provisions of the law in force at different times and, in general, a comparison with the experience of other employers.

The object, purpose and effect of the 1953 Amendment of Section 72-1351(d), I.C., was to change and liberalize the conditions under which a successor employer is permitted to assume the experience of his predecessor for the purpose of acquiring an experience rating. The amendment in no way changes the method of computation of the wage base as provided by Section 72-1328, I.C.

I am of the opinion that the Central Eureka Corporation was not entitled to credit for the wages paid by its predecessor in interest in computing the $3,000 wages paid to an employee during the calendar year; and that such corporation should report and pay taxes upon the wages paid by it not exceeding $3,000 to each individual employee, as contended by appellant.